UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT D. BOEHRINGER and DEBORAH J. BOEHRINGER, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT TO QUIET TITLE

This is an action to quiet title pursuant to Massachusetts General Laws, Chapter 185, Section 26A, Massachusetts General Laws Chapter 240, Sections 6 to 10, and the federal Quiet Title Act, 28 U.S.C. § 2409a. Plaintiffs Robert D. Boehringer and Deborah J. Boehringer (collectively the "Boehringers") seek to: (1) establish title to land abutting land they own by record deed, which they hold and possess in fee simple under the Derelict Fee Statute; (2) quiet title to that land; and (3) extinguish any easements thereon.

### PARTIES

1. Plaintiffs Robert D. Boehringer and Deborah J. Boehringer are individuals with a mailing address of 83 Sea Beach Drive, Stamford, CT 06902. They are the record owners of real property located at 164 Cliff Road, Wellfleet, MA 02667.

2. Defendant United States of America ("United States") is a sovereign nation with a local address at the Cape Cod National Seashore Headquarters, 99 Marconi Site Road, Wellfleet, MA 02667.

JURISDICTION AND VENUE

3. Jurisdiction lies in this court pursuant to 28 U.S.C. § 1346 and 28 U.S.C. § 2409a. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(d).

FACTS

*The Wellfleet By the Sea Subdivision*

4. On November 1, 1915, Arthur H. Buffum ("Buffum") acquired title to a parcel of oceanfront land in South Wellfleet, Barnstable County, Massachusetts by a warranty deed recorded in the Barnstable County Registry of Deeds (the "Registry") in Book 341, Page 494.

5. Buffum subdivided the southerly portion of this land into hundreds of small lots by an undated plan titled "Section No. 1 of Wellfleet By the Sea, South Wellfleet Mass. for sale by the A.H. Buffum Realty Co., Boston Mass. and Springfield Mass.," recorded in the Registry in Plan Book 1, Page 29 ("Wellfleet by the Sea Plan No. 1").

6. On August 15, 1916, Buffum conveyed the real property described in Book 341, Page 494, excepting certain lots within Wellfleet by the Sea Plan No. 1 that he had previously conveyed out by various deeds of record, to himself as Trustee of the A.H. Buffum Realty Co. u/d/t dated August 15, 1916 (recorded in the Registry in Book 347, Page 458) ("Buffum Realty Co.") by a warranty deed recorded in the Registry in Book 344, Page 395.

7. Buffum subdivided the northerly portion of the land described in Book 341, Page 494 into hundreds of small lots ("Subdivision") by an undated plan titled "Plan of Wellfleet By the Sea in South Wellfleet, Mass. (Section 2) owned and for sale by A.H. Buffum Realty Co., Boston, Worcester, and Springfield, Mass. and Hartford, Conn.," recorded in the Registry in Plan Book 8, Page 25 ("Wellfleet by the Sea Plan No. 2").

8.     Among the lots created by the Subdivision are four lots, shown on Wellfleet by the Sea Plan No. 2 as Block 1, Lot 15 ("Lot 15"), Lot 16 ("Lot 16"), Lot 17 ("Lot 17"), and Lot 18 ("Lot 18").

*Title to Lot 15 and Lot 16 Forward out of the Buffum Realty Co.*

9.     Lot 15 is depicted on Wellfleet by the Sea Plan No. 2 as being bounded on the north by Alden Road, on the west by Cliff Road, on the south by Lot 14 of Block 1, and on the east by Lot 16.

10.     Between August 15, 1916 and February 12, 1930, the Buffum Realty Co. did not convey out, by any record instrument, the fee interest in any section of Alden Road or Cliff Road adjacent to Lot 15.

11.     On February 12, 1930, Buffum, as Trustee of the Buffum Realty Co., conveyed Lot 15 to John E. Kiley ("Kiley") by deed recorded in the Registry in Book 424, Page 62. The Buffum Realty Co. did not reserve the fee interest in Alden Road or Cliff Road in its conveyance to Kiley.

12.     Between February 12, 1930 and December 13, 1946, Kiley did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Lot 15.

13.     On December 13, 1946, the Town of Wellfleet (the "Town") took Lot 15 from Kiley for nonpayment of taxes for the year 1945 by the instrument recorded in the Registry in Book 662, Page 88.

14.     Lot 16 is depicted on Wellfleet by the Sea Plan No. 2 as being bounded on the north by Alden Road, on the west by Lot 15, on the south by Lot 13 of Block 1, and on the east by Lot 17.

15. On October 2, 1929, Buffum, as Trustee of the Buffum Realty Co., conveyed Lot 16 to Edward J. Stone ("Stone") by deed recorded in the Registry in Book 412, Page 531. The Buffum Realty Co. did not reserve the fee interest in Alden Road in its conveyance of Lot 16 to Stone.

16. On December 13, 1946, the Town took Lot 16 from Stone for nonpayment of taxes for the year 1945 by the instrument recorded in the Registry in Book 662, Page 220.

17. On December 14, 1948, the Town recorded an affidavit in the Registry to foreclose the tax titles to multiple parcels of land of low value, including Lot 15 and Lot 16, in Book 710, Page 45.

18. On December 30, 1948, the Town recorded a treasurer's deed in the Registry granting title to multiple parcels of land in low value to the Town, including Lot 15 and Lot 16, in Book 711, Page 302.

19. Between the time of the Town's respective takings of Lot 15 and Lot 16 and September 12, 1950, the Town did not convey out, by any record instrument, the fee interest in any section of Alden Road or Cliff Road adjacent to Lot 15 or Lot 16.

20. On September 12, 1950, the Town conveyed, among other lots, Lot 15 and Lot 16 to Frank G. Maguire ("Maguire") by quitclaim deed recorded in the Registry in Book 763, Page 491. These two lots were described in that deed as "Parcel 45," subject to a deed restriction that the parcel could not be subdivided into lots for sale.

21. The Town did not reserve the fee interest in Alden Road or Cliff Road in its conveyance of Lot 15 and Lot 16 to Maguire.

22. Between September 12, 1950 and May 15, 1959, Maguire did not convey out, by any record instrument, the fee interest in any section of Alden Road or Cliff Road adjacent to Lot 15 or Lot 16.

23. On May 15, 1959, Maguire conveyed Lot 15 and Lot 16 to Deborah Ann Shomphe, George J. Shomphe and Anna Marjorie Shomphe, as joint tenants (the "Shomphes"), by quitclaim deed recorded in the Registry in Book 1041, Page 122. Maguire did not reserve the fee interest in Alden Road or Cliff Road in his conveyance of Lot 15 and Lot 16 to the Shomphes.

24. Between May 15, 1959 and December 15, 1969, the Shomphes did not convey out, by any record instrument, the fee interest in any section of Alden Road or Cliff Road adjacent to Lot 15 or Lot 16.

25. On December 15, 1969, the Shomphes conveyed Lot 15 and Lot 16 to John Dixon and Elizabeth G. Dixon as joint tenants (the "Dixons") by quitclaim deed recorded in the Registry in Book 1458, Page 1158. The Shomphes did not reserve the fee interest in Alden Road or Cliff Road in their conveyance of Lot 15 and Lot 16 to the Dixons.

*Title to Lot 17 and Lot 18 Forward out of the Buffum Realty Co.*

26. Lot 17 is depicted on the Wellfleet by the Sea Plan No. 2 as being bounded to the north by Alden Road, to the west by Lot 16, to the south by Lot 12 of Block 1, and to the east by Lot 18.

27. Lot 18 is depicted on the Wellfleet by the Sea Plan No. 2 as being bounded to the north by Alden Road, to the west by Lot 17, to the south by Lot 11 of Block 1, and to the east by Lot 19 of Block 1.

28. On October 18, 1928, Buffum, as Trustee of the Buffum Realty Co., conveyed Lot 17 and Lot 18 to Eliza J. Clinton ("Clinton") by deed recorded in the Registry on August 8, 1929 in Book 466, Page 368. The Buffum Realty Co. did not reserve the fee interest in Alden Road in its conveyance of Lot 17 and Lot 18 to Clinton.

29. On October 27, 1948, the Town took Lot 17 and Lot 18 for nonpayment of taxes for the year 1946 by the instrument recorded in the Registry in Book 706, Page 70.

30. On November 21, 1950, the Town recorded an affidavit in the Registry to foreclose the tax titles to multiple parcels of land of low value, including Lot 17 and Lot 18, in Book 769, Page 539.

31. On December 20, 1950, the Town recorded a treasurer's deed in the Registry granting title to multiple parcels of land of low value to the Town, including Lot 17 and Lot 18, in Book 772, Page 380.

32. Between the time of the Town's respective takings of Lot 17 and Lot 18 and September 21, 1954, the Town did not convey out, by any record instrument, the fee interest in any section of Alden Road adjacent to Lot 17 or Lot 18.

33. On September 21, 1954, the Town conveyed, among other lots, Lot 17 and Lot 18 to George E. Crosen and Eunice J. Crosen (the "Crosens") by quitclaim deed recorded in the Registry in Book 890, Page 71. These two lots were described as "Parcel 150," subject to a deed restriction that the lots could not be subdivided into lots for sale.

34. The Town did not reserve the fee interest in Alden Road in its conveyance of Lot 17 and Lot 18 to the Crosens.

35. Between September 21, 1954 and February 18, 1960, the Crosens did not convey out, by any record instrument, the fee interest in any section of Alden Road adjacent to Lot 17 or Lot 18.

36. On February 18, 1960, the Crosens conveyed Lot 17 and Lot 18 to George J. Shompe ("Shompe") by quitclaim deed recorded in the Registry in Book 1321, Page 471. The Crosens did not reserve the fee interest in Alden Road in their conveyance to Shompe of Lot 17 and Lot 18.

37. Between February 18, 1960 and December 15, 1969, Shompe did not convey out, by any record instrument, the fee interest in any section of Alden Road adjacent to Lot 17 or Lot 18.

38. On December 15, 1969, Shompe conveyed Lot 17 and Lot 18 to the Dixons by quitclaim deed recorded in the Registry in Book 1458, Page 1159. Shompe did not reserve the fee interest in Alden Road in his conveyance to the Dixons of Lot 17 and Lot 18.

39. Thus, as of December 15, 1969, the Dixons were the owners in fee simple of Lot 15, Lot 16, Lot 17, and Lot 18, which collectively, comprise the parcel of land which is the subject of this complaint, being the land located at the address now known as 164 Cliff Road and as Wellfleet Assessor's Map 24, Parcel 100 ("Locus").

*Title to Lots 15, 16, 17, and 18 Forward Into the Boehringers*

40. Between December 15, 1969 and November 21, 1978, the Dixons did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Locus.

41. On November 21, 1978, the Dixons conveyed Locus to William C. Whittemore, Jr. and Suzette S. Whittemore (the "Whittemores") by quitclaim deed recorded in the Registry in

7

Book 2832, Page 305. The Dixons did not reserve the fee interest in Alden Road or Cliff Road in their conveyance to the Whittemores of Locus.

42. Between November 21, 1978 and October 30, 1981, the Whittemores did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Locus.

43. On October 30, 1981, the Whittemores conveyed Locus to Gordon F. Neylon and Beverly Neylon (the "Neylons") by quitclaim deed recorded in the Registry in Book 3388, Page 43. The Whittemores did not reserve the fee interest in Alden Road or Cliff Road in their conveyance to the Neylons of Locus.

44. Between October 30, 1981 and January 14, 1991, the Neylons did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Locus.

45. On January 14, 1991, the Neylons conveyed Locus to Susan G. MacConnell ("MacConnell") by quitclaim deed recorded in the Registry in Book 7420, Page 70. The Neylons did not reserve the fee interest in Alden Road or Cliff Road in their conveyance to MacConnell of Locus.

46. Between January 14, 1991 and October 22, 2001, MacConnell did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Locus.

47. On October 22, 2001, MacConnell conveyed Locus to herself and Richard G. Neylon by quitclaim deed recorded in the Registry in Book 14400, Page 269. MacConnell did not reserve the fee interest in Alden Road or Cliff Road in her conveyance to herself and Richard G. Neylon of Locus.

48. Between October 22, 2001 and June 7, 2012, MacConnell and Richard G. Neylon did not convey out, by any record instrument, the fee interest in any portion of Alden Road or Cliff Road adjacent to Locus.

49. On June 7, 2012, MacConnell and Richard G. Neylon conveyed Locus to the Boehringers by quitclaim deed recorded in the Registry in Book 26396, Page 325.

50. The Boehringer's deed describes Locus as follows:

Parcel 1  Northerly by Alden Road, as shown on the plan hereinafter mentioned Easterly by Lot 17, as shown on said plan, on hundred (100) feet; Southerly as shown on said plan, fifty (50) feet; and Westerly by Cliff Road, as shown one (100) hundred feet.

Being Lots 15 and 16, Block 1 as shown on plan recorded with Barnstable Registry of Deeds entitled, "Section 2 of Wellfleet by the Sea in South Wellfleet, Massachusetts for sale by A.H. Buffum Realty Co., Boston, Mass. and Springfield, Mass.", which plan is duly recorded in Barnstable County registry of deeds in Plan Book 8, Page 25.

Parcel 2  Northerly by Alden Road, as shown on the plan hereinafter mentioned Easterly by Lot 19, as shown on said plan, on hundred (100) feet; Southerly as shown on said plan, fifty (50) feet; and Westerly by Lot 16, as shown one hundred (100) feet.

Being Lots 17 and 18, Block 1, shown on the plan recorded with Barnstable Registry of Deeds entitled "Section 2 of Wellfleet by the Sea in South Wellfleet, Massachusetts for sale by A.H. Buffum Realty Co., Boston, Mass and Springfield, Mass.", which plan is duly recorded in Barnstable County registry of deeds in Plan Book 8, Page 25.

51. MacConnell and Richard G. Neylon did not reserve the fee interest in Alden Road or Cliff Road in their conveyance to the Boehringers of Locus.

52. From June 7, 2012 to the present date, the Boehringers have not conveyed out, by record instrument or otherwise, the fee interest in any section of Alden Road or Cliff Road adjacent to Locus.

*Roads at Locus*

53. As depicted on the Wellfleet by the Sea Plan No. 2, Locus is bounded by Cliff Road on the west and Alden Road on the north.

54. Although Cliff Road is shown on that plan, it does not exist on the ground as an improved road or way between North Circuit Road and Alden Road.

55. Instead, a dirt road leads to Locus from the north, along the location of Cliff Road, but that dirt road turns to the west along the location of North Circuit Road.

56. As it exists on the ground, Cliff Road continues southerly past Locus, and provides actual access to the following properties:

   a. 330 Alden Road, Wellfleet, MA 02667 ("330 Alden"), owned by Robert A. Shuman and Christina M. Shuman, Trustees of the R&C Shuman Wellfleet Realty Trust, and Howard S. Ross and Rebecca Ross, Trustees of the Ross Realty Trust of 2008 (collectively, the "Shuman and Ross Trusts");

   b. 331 North Circuit Road, Wellfleet, MA 02667 ("331 North Circuit"), owned by Douglas M. Freeman ("Freeman");

   c. 320 North Circuit Road, Wellfleet, MA 02667 ("320 North Circuit"), owned by Debra N, Orr, as Trustee of the Midbarn Realty Trust ("Midbarn Trust");

   d. 132 Cliff Road, Wellfleet, MA 02667 ("132 Cliff"), owned by Martha A. Field ("Field");

   e. Four unnumbered parcels of unimproved land owned by the United States, as follows:

      i. An unnumbered parcel of unimproved land bounded by Locus and Alden Road to the north, Cliff Road to the west, North Circuit Road to the south, and the bluff and beach of the Atlantic Ocean to the east;

  ii. An unnumbered parcel of unimproved land bounded by 330 Alden Road to the north, Cliff Road to the east, North Circuit Road to the south, and 331 North Circuit to the west;

  iii. An unnumbered parcel of unimproved land bounded by North Circuit Road and 132 Cliff Road to the north, Cliff Road to the west, Highland Road to the south, and the bluff and beach of the Atlantic Ocean to the east; and

  iv. An unnumbered parcel of unimproved land bounded by North Circuit Road to the north, several parcels of privately-owned land to the west, Highland Road to the south, and Cliff Road to the east.

57. To the best of the Boehringers' knowledge, excluding the properties identified in Paragraph 56 above, there are no other developed or undeveloped properties which use the section of Cliff Road adjacent to Locus for access, nor are there any other properties which require that section of the way for access.

58. The Shuman and Ross Trusts, as owners of 330 Alden Road, have released all easement rights they have in the easterly half of that portion of Cliff Road adjacent to Locus, between the lines of Lot 15 extended westerly, to the centerline of Cliff Road. *See* 330 Alden Road Release of Easement, attached as <u>Exhibit A</u>.

59. Freeman, as owner of 331 North Circuit Road, has released all easement rights he has in the easterly half of that portion of Cliff Road adjacent to Locus, between the lines of Lot 15 extended westerly, to the centerline of Cliff Road. *See* 331 North Circuit Road Release of Easement, attached as <u>Exhibit B</u>.

60. The Midbarn Trust, as owner of 320 North Circuit Road, has released all easement rights it has in the easterly half of that portion of Cliff Road adjacent to Locus, between the lines of Lot 15 extended westerly, to the centerline of Cliff Road. *See* 320 North Circuit Road Release of Easement, attached as <u>Exhibit C</u>.

61. Field, as owner of 132 Cliff Road, has released all easement rights she has in the easterly half of that portion of Cliff Road adjacent to Locus, between the lines of Lot 15 extended westerly, to the centerline of Cliff Road. *See* 132 Cliff Road Release of Easement, attached as <u>Exhibit D</u>.

*Confirmation of Title to That Portion of Cliff Road Abutting Locus, to the Centerline of Cliff Road (Easterly Half)*

62. The Derelict Fee Statute, M.G.L. c. 183, § 58, provides that a land owner who sells off land abutting a public or private way automatically conveys a fee interest in that way, unless the conveyance contains the express reservation required by the statute in the deed. The ownership in the way so-conveyed extends to the centerline of the way, if there are lots located on both sides of the way:

> Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding on a side line.

63. The operation of the Derelict Fee Statute, enacted in 1971, is retroactive, and it therefore applies to land conveyed out prior to that date.[1] M.G.L. c. 183, § 58.

64. The land depicted on the Wellfleet by the Sea Plan No. 2 was subdivided into individual lots by its then-current owner, Arthur H. Buffum, Jr. at some point in time prior to August 8, 1929, by the creation and recording of the Wellfleet by the Sea Plan No. 2 in Plan Book 8, Page 25.[2]

65. Buffum's ownership at the time of the Subdivision included the fee interest in each and every road within the Subdivision, because he took title to the original parcel in its entirety from Luther F. Crowell by the deed recorded in the Registry in Book 341, Page 494 (dated November 1, 1915), yet he never separately deeded out the fee interest in the roads by any instrument of record.

66. In the various conveyances of Lot 15, Lot 16, Lot 17, and Lot 18 in the chains of title extending from Buffum forward to the Boehringers, there has never been a reservation of the fee interest in the easterly half of that portion of Cliff Road that abuts Locus to the west, by any owner of Lot 15, Lot 16, Lot 17, or Lot 18, nor has any such owner conveyed out the fee interest in that portion of Cliff Road by separate instrument of record during their respective periods of ownership.

67. Therefore, pursuant to M.G.L. c. 183, § 58, the Boehringers, and their predecessors in title before them, own the fee interest in the section of Cliff Road adjacent to Locus, to the centerline thereof (i.e., own the easterly half of the road), and own the fee interest

---

[1] Excepting registered or confirmed land, or to the extent that a person or his or her predecessor in title has changed his or her position as a result of a decision of a court of competent jurisdiction. *Id.*

[2] The Wellfleet by the Sea Plan No. 2 does not appear to be dated, but according to the Registry, it was first recorded in 1929. In any event, the plan was created at least prior to August 8, 1929 (the date of the deed conveying Lot 17 and Lot 18 from Buffum to Eliza J. Clinton), because that deed makes reference to the plan in its description of the premises.

13

in the section of Alden Road adjacent to Locus, to the centerline thereof (i.e., own the southerly half of the road).

*Extinguishing Easements Over That Portion of Cliff Road Abutting Locus, to the Centerline of Cliff Road (i.e. the Easterly half) by Adverse Possession*

68. The Boehringers have been in actual possession of the section of Cliff Road adjacent to Locus, between the lines of Lot 15 extended westerly, to the centerline of Cliff Road ("Disputed Area") since they purchased Locus in 2012 to the present.

69. The Boehringers' predecessors in title have been in actual possession of the Disputed Area for a period of time in excess of twenty (20) years, since at least April of 1995.

70. The Boehringers' and their predecessors' in title have possessed the easterly half of Cliff Road adversely, openly, notoriously, continuously, and exclusively under a claim of right and title.

71. The Boehringers and their predecessors in title have used the easterly half of that portion of Cliff Road that abuts Locus as their driveway and parking area at Locus, since at least April 1995 to the present.

72. Upon information and belief, the Shuman and Ross Trusts, as owners of the property at 330 Alden Road, own the westerly half of that portion of Cliff Road, adjacent to and westerly of the Disputed Area, by operation of the Derelict Fee Statute, M.G.L. c. 183, § 58.

73. The Boehringers make no claim for adverse possession or ownership of the westerly portion of Cliff Road, adjacent to and westerly of the Disputed Area, which is owned by the Shuman and Ross Trusts, but retain their easement rights over that portion of Cliff Road.

# COUNT I – QUIET TITLE

74. The Boehringers repeat the allegations contained in paragraphs 1 through 73 as if fully set forth herein.

75. The United States owns the unnumbered parcel of land abutting and surrounding Locus, which parcel is bounded by Locus and Alden Road to the north, Cliff Road to the west, North Circuit Road to the south, and the bluff and beach of the Atlantic Ocean to the east.

76. The United States owns the unnumbered parcel of unimproved land bounded by 330 Alden Road to the north, Cliff Road to the east, North Circuit Road to the south, and 331 North Circuit to the west.

77. The United States owns the unnumbered parcel of unimproved land bounded by North Circuit Road and 132 Cliff Road to the north, Cliff Road to the west, Highland Road to the south, and the bluff and beach of the Atlantic Ocean to the east.

78. The United States owns the unnumbered parcel of unimproved land bounded by North Circuit Road to the north, several parcels of privately-owned land to the west, Highland Road to the south, and Cliff Road to the east.

79. The United States could assert a right to use the Disputed Area.

80. These facts have created a cloud of suspicion upon the Boehringers' title to the Disputed Area.

81. The Boehringers have no adequate remedy at law to remove that cloud of suspicion from their title.

# PRAYER FOR RELIEF

WHEREFORE, the plaintiffs Robert and Deborah Boehringer, pray:

1. That the Court order notice to the United States pursuant to G.L. c. 240, § 7;

2. That all apparent imperfections or clouds upon the Boehringers' title to the Disputed Area, other than mortgages, easements and restrictions of record, be forever removed, and that the Boehringers' title and possession be decreed firm and effectual and in fee forever, and that the United States be forever barred, estopped, and enjoined from having or claiming any right, title or interest in or to the Disputed Area adverse to the Boehringers, their heirs, devisees, grantees, successors in title, or assigns;

3. That the Court enter a judgment with respect to the Disputed Area determining, establishing, confirming and quieting title thereto, subject only to the holders of mortgages, easements and restrictions of record, and removing the cloud upon title to the Disputed Area by declaring that the heirs, legal representatives, successors and assigns of the United States have no claim upon or interest in the Disputed Area;

4. That the Court order such other relief as it deems just and equitable.

ROBERT AND DEBORAH BOEHRINGER,

By their attorney,

/ s / *Jean L. R. Kampas*
Jean L. R. Kampas (BBO # 676308)
Nutter McClennen & Fish, LLP
1471 Iyannough Road, PO Box 1630
Hyannis, MA  02601
(508) 790-5400

Date: August 19, 2020   jkampas@nutter.com

4900813.1